# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3191-17T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

D.A.W.,

     Defendant-Appellant,

and

R.L.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.J.W.,

     Minor.

_____

       Submitted November 14, 2018 – Decided November 21, 2018

       Before Judges Fisher and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0241-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Ruth A. Harrigan, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Francesca E. Cheli, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith A. Pollock, Deputy Public Defender, of counsel; Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant D.A.W. (Darla, a fictitious name) gave birth to a son, N.J.W., on June 25, 2015. A few weeks earlier, plaintiff Division of Child Protection and Permanency received a referral based on Darla's schizophrenic disorder, her past failure to take appropriate medication or engage in therapy for that condition, and her pregnancy. In investigating, the Division learned from its Florida counterpart that Darla's parental rights were terminated in 1994 because of her physical abuse of her older children. The Division sought and obtained custody of the child and, when Darla's engagement in available mental health resources proved sporadic and ineffectual, the Division sought to terminate her

2

parental rights. After a three-day trial in late January and early February 2018, the judge rendered a written decision and entered a judgment of guardianship on March 1, 2018.

Defendant appeals, arguing the judge erred in finding there was clear and convincing evidence to satisfy the four prongs of N.J.S.A. 30:4C-15.1(a). We disagree and affirm substantially for the reasons set forth in Judge Nora J. Grimbergen's thorough and well-reasoned written opinion.

In considering the issues presented, we start by recognizing that parents have a constitutionally protected right to the care, custody and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . . ,' [that are] 'far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted). "[T]he preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare." N.J.S.A. 30:4C-1(a); see also K.H.O., 161 N.J. at 347.

But the constitutional right to the parental relationship is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a

parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining when a parent's rights must be terminated in a child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . .;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11.

In considering the judge's findings in light of these standards, we note that shortly after the child's birth, Darla was referred by the Division for a psychological evaluation. Dr. Alison Winston found that Darla "significantly

minimized" the conduct that led to the abuse of her older children, and that she had not "consistently engaged in services over the past twenty years to address her abusive behaviors" and the concomitant consequences of the loss of her parental rights. For these and other reasons, Dr. Winston opined that Darla was then incapable of providing the child with a safe and stable environment.

Thereafter, as recounted in the judge's findings of fact, Darla engaged in "increasingly erratic" behavior. At times she denied her psychiatric problem and failed to take appropriate medication to ameliorate her mental health issues. She started treatment at one facility but left upon disagreeing with their diagnosis. She was ordered to sign a release for past treatment records but refused, thereby delaying a psychological evaluation. Darla's attendance at a program for intensive outpatient psychological treatment was also sporadic, although she eventually completed the program in March 2016. She did not, however, fare as well at a subsequently private outpatient program; the judge found Darla's erratic behavior led to a termination of those sessions in May 2016.

The following month, Dr. Winston conducted a second evaluation. She determined that Darla: was not taking prescribed medication; continued to minimize her parenting problems in Florida; presented "with paranoid and

A-3191-17T4

suspicious tendencies"; demonstrated "no insight into her behaviors or the reasons for others' concerns about her actions"; and was not engaged in "the appropriate level of mental health services to meet her needs." Consequently, the court approved the Division's goal of adoption.

An order was entered in August 2016, compelling Darla to engage in a partial hospitalization program to address her mental health issues.[1] Her attendance was spotty, and she failed to complete the program. At a permanency hearing in May 2017, the court determined that Darla wasn't compliant with mental health treatment, lacked housing, and had failed to provide the Division with her contact information. She began attending individual counseling on a monthly basis but, as usual, her visits became sporadic, as were her visits with the child.

After the Division lost contact with Darla for a few weeks, she appeared at the Division's offices in July 2017 and provided a New York address, an address later shown to be fictitious. She claimed to have been attending therapy sessions but was unable to provide any details. That month, the Division

---

[1] Around this time, R.L. was determined to be the child's father. At first, he visited the child on a regular basis, and in December 2016, the Division changed its goal to unifying R.L. and the child. In April 2017, however, R.L. advised the Division that he wanted the child to remain with the resource parent and he voluntarily surrendered his parental rights in May 2017.

commenced this guardianship action, and Darla was directed to participate in a bonding evaluation and another psychological evaluation with Dr. Winston.

In relying on Dr. Winston's trial testimony, the judge determined that the child had "an insecure emotional attachment" to Darla, that he would suffer only "minimal to no emotional harm" if Darla's parental rights were terminated, and that any such harm would be ameliorated "by the strength of [the child's] emotional attachment to his resource parent." The judge also found that the child would suffer "serious and enduring emotional harm" if removed from his resource parent with whom he had "lived almost his entire life." The judge found that the child perceived the resource parent "as his psychological parent" and he had "a strong and secure emotional attachment" to the resource parent.

Judge Grimbergen found and analyzed all these and other circumstances recounted in her thirty-five-page opinion in concluding that all four statutory prongs favored termination. The judge's findings are supported by evidence she found credible and are, therefore, deserving of appellate deference. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413 (1998). The judge soundly applied those findings to the governing legal principles in concluding that entry of the judgment under review was in the child's best interests.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION